NOT DESIGNATED FOR PUBLICATION

No. 113,482

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
M.E., born in 2009, and
J.E., born in 2010,
Children under Eighteen Years of Age.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed November 25, 2015. Affirmed.

*Richard L. Dickson*, of Wichita, for appellant natural father.

*Erin E.M. Sizemore*, of Wichita, for appellee Kansas Department of Children and Families.

Before HILL, P.J., PIERRON and POWELL, JJ.

*Per Curiam*: The natural father of M.E., born in 2008, and J.E., born in 2010, appeals the termination of his parental rights. In November 2014, the district court found clear and convincing evidence that Father was unfit to parent M.E. and J.E. and the conduct or condition rendering him unfit was unlikely to change in the foreseeable future. The court terminated Father's parental rights. Father contends the court should have reintegrated him with M.E. and J.E. in June or July 2013 and the social services agencies had not provided reasonable efforts towards reintegration.

Because the district court's decision not to reintegrate the family in the summer of 2013 is not properly before us, we decline to review that issue. The record on appeal reveals the social services agencies involved expended reasonable efforts to reintegrate Father with M.E. and J.E. As such, we affirm the termination of Father's parental rights.

1

In March 2012, Wichita police officers responded to the home of L.C., the natural mother of M.E. and J.E. Mother had called 911 and reported that M.E., who was 3 years old, had wandered off. Officers found M.E. about a block from Mother's home. M.E. told officers he went to the liquor store to get Mother more beer. The officers spoke to Mother and smelled alcohol on her breath. They could also smell the stench of her home from outside. A homeless man who had been drinking with Mother at her house told officers Mother physically abused the children and smoked crack in front of them. The officers noted Mother had burned finger tips, which indicated she smoked crack. The officers took M.E. and J.E. into police protective custody after observing Mother's extreme intoxication, bruising on the boys, and the filthy conditions of Mother's home—cockroaches throughout, insect feces in the refrigerator, rotten food, and dirty carpet.

A social worker with the Kansas Department of Social and Rehabilitative Services (SRS), now the Kansas Department of Children and Families (DCF) already had an open case with the family. The day after police responded to Mother's home, a social worker spoke with Mother and Father and went to Mother's house. Father had been in jail for a domestic violence incident involving Mother at the time.

On April 4, 2012, the State filed a petition alleging M.E. and J.E. were children in need of care (CINCs). The petition stated that Mother had neglected the children and provided unhealthy living conditions. The State noted her history of severe substance abuse, including that she had recently suffered a drug induced stroke. The petition also alleged that Father had failed to provide a safe and stable environment for the children, failed to protect the children from Mother's substance abuse, and alleged that Father might be abusing drugs. The district court issued ex parte temporary custody orders placing M.E. and J.E. in protective custody with DCF.

After a temporary custody hearing, M.E. and J.E. remained in DCF custody. Father had waived his right to an evidentiary hearing.

In May 2012, Father also waived his right to an evidentiary hearing and entered a no-contest statement to the CINC petition. The district court adjudicated M.E. and J.E. to be CINCs. Father later sought relief from his waivers, but he failed to appear in court for the evidentiary hearing to address his request. The court found Father in default and did not grant him relief.

The district court held permanency hearings in August and November 2012 and August and November 2013. Each time, the court ordered that M.E. and J.E. remain in DCF custody to give the parents more time to achieve progress on their reintegration tasks. The court noted that the parents needed to "tighten up orders and finish expectations." The court determined Father was the potential reintegration resource.

Twice Father had been close to reintegration, first during the summer of 2013 and then again in the winter of 2013. But both times, an obstacle caused by Father prevented reintegration. In June 2013, Father was close to reintegration, but concerns with M.E. and J.E.'s behavior slowed the process. Then, in July, the case worker had received information regarding potential physical abuse of M.E. M.E. had bruising on his back. Father indicated he had meant to spank M.E., but he missed and hit him in the back. The case worker was concerned about the severity of the attempted spanking.

After a permanency hearing in November 2013, the district court determined reintegration was not possible at that point.

In December 2013, the case was again progressing towards reintegration and the district court granted Father overnight visits with M.E. and J.E. However, in January

3

2014, Father tested positive for methamphetamines from a hair follicle test. The social services providers again recommended slowing down the reintegration process.

In May 2014, DCF filed a motion for termination of Mother's and Father's parental rights. After an evidentiary hearing, the district court terminated Mother's rights but continued the case for 2 months as to Father's rights, although the court acknowledged this case had been going on for a long time. The court noted specific issues to be addressed, including Father's substance abuse, getting a new report from the children's therapist, and increasing interaction between Father and the children's therapist.

The therapist provided a report to the case worker in September 2014. In summary, the therapist was troubled by Father's lack of engagement and his failure to understand the needs of M.E. and J.E. St. Francis, the social service provider in charge of the case, provided a report to the court on October 9, 2014. The report summarized the needs and progress of M.E. and J.E., the services provided to the family, and Father's failure to engage and make consistent progress towards reintegration.

In October 2014, the district court held a trial to address Father's rights. M.E. and J.E. had been in DCF custody for 2 1/2 years. The State presented evidence from Father; the therapist (also a licensed social worker) who had worked with Father, M.E. and J.E. throughout the case; and M.E. and J.E.'s case manager. Most of the testimony concerned the boys' needs and Father's failure to fully engage with therapy and treatment both for himself and for the benefit of M.E. and J.E. Father's drug abuse was also at issue. The testimony and evidence revealed that Father had completed many of the tasks ordered, but he had never fully engaged with the therapists and consistently blamed the "system" and Mother for M.E.'s and J.E.'s emotional disturbances. He was also dishonest about his drug use.

4

Both children had significant special needs and behavior issues. M.E. had been diagnosed with an anxiety disorder due to neglect and physical abuse. J.E. had been diagnosed with posttraumatic stress disorder, possible fetal alcohol syndrome, and as being severely emotional disturbed.

Regarding Father's interaction and engagement with therapists and his children, the evidence revealed that Father claimed he made himself available to the therapist during the 2-month continuance granted by the district court but she did not always respond. Father said he called the therapist at least weekly. He also argued with the therapist about the focus being on his actions instead of on the children. The therapist's testimony contradicted Father's. She testified she set aside an hour a week at Father's convenience—4 p.m. on Mondays—for Father to call so the two could discuss the needs of M.E. and J.E, how to provide for their needs, and to provide Father with basic information about the progress of therapy. Father did not call every week, did not always return calls, and did not always call on time. She acknowledged the focus of therapy was often on Father but explained it was to help him understand the boys' needs. The therapist was most concerned with the "other 23 hours" of the children's day—not the hour they spent in therapy—and Father never grasped that his choices were key to this.

The therapist testified she observed no real change—or willingness to change—from Father. Father acknowledged that his boys had special needs, but he blamed their experience of "going through the system" as the cause. Father felt that M.E. and J.E. had been well taken care of before being taken into DCF custody, despite Mother's substance abuse. Father also claimed M.E. and J.E.'s upbringing had not affected them.

In regards to Fathers interaction with M.E. and J.E., the case worker and therapist had differing opinions. The case worker felt M.E. and J.E. enjoyed their home visits with Father; and he never observed the children acting fearful of Father. But the therapist testified M.E distrusted Father and overcompensated for him. She felt the boys were

5

scared of Father and that visitation was not in their best interests. Her report indicated that M.E. had shown very recent improvement in behavior, but that M.E. said he wanted to see Father but feared him. J.E. had to be prodded and convinced to sit with Father, and J.E. had never allowed Father to comfort him. She felt it would be hurtful to continue the case based on the children's concept of time.

To track Father's drug use, the district court had ordered drug testing. Though Father often submitted negative tests, he was caught trying to use someone else's urine once and he frequently delayed testing. Additionally, the case worker testified he had received anonymous reports from three separate individuals that Father was using drugs. When confronted with the positive hair follicle result in January 2014, Father claimed he had been in a car with multiple people who were smoking methamphetamines and blamed the positive hair follicle test results on contact with second hand methamphetamine smoke. When asked why he did not leave the car, Father claimed he was trying to get to work. However, the case worker said Father's explanation was not possible—second hand methamphetamine smoke would not show up on a hair follicle test.

Ultimately, the case manager testified that Father was unable to provide for the emotional and educational needs of M.E. and J.E and he recommended that termination of Father's rights and adoption was in the children's best interests. Despite the therapist's attempts to strengthen the bond between Father and his children, the relationship never strengthened. Improvement in the relationship with his children had been slowed by Father's erratic behavior. The children's therapist and case worker testified Father did not appreciate the nature of his children's diagnoses. The case worker testified that Father was close to reintegration on two occasions, but he had failed to follow through and attempts to reintegrate failed.

The therapist felt the boys needed permanency to work through their emotional needs and Father could not provide it.

After hearing testimony and considering the evidence, the district court found by clear and convincing that Father was unfit by reason of conduct or condition which rendered him unable to properly care for M.E. and J.E. and that the conduct or condition was unlikely to change in the foreseeable future. The court also determined that terminating Father's parental rights was in M.E.'s and J.E.'s best interests. The court acknowledged the difficulty this presented for Father and that he loved M.E. and J.E., but it ultimately determined Father had not shown he could care for his children.

Father presents two issues on appeal. First, he challenges the reasonableness of the efforts social services providers expended in an effort to reintegrate his family. Second, although his issue statement also indicates he generally challenges the sufficiency of the evidence supporting termination, the substance of that argument is actually a challenge to the district court's decision not to reintegrate his family in June or July 2013.We turn to that issue first.

*Standard of Review*

Although no challenge to our jurisdiction has been made by the State, we have a duty to question jurisdiction on our own initiative. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013). "Appellate courts have only such jurisdiction as is provided by law. [Citation omitted.] The existence of jurisdiction is a question of law subject to unlimited appellate review." *In re N.A.C.*, 299 Kan. 1100, 1106, 329 P.3d 458 (2014).

The Revised Kansas Code for Care of Children contains its own statute governing appealable orders. K.S.A. 2014 Supp. 38-2273. Under K.S.A. 2014 Supp. 38-2273(a), a

party may appeal only certain orders: "temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." The procedure for an appeal under the Revised Code "shall be governed by article 21 of chapter 60 of the Kansas Statutes Annotated." K.S.A. 2014 Supp. 38-2273(c). Under K.S.A. 2014 60-2103(a), an appeal must be taken within "30 days from the entry of the judgment." The notice of appeal "shall designate the judgment or part thereof appealed from." K.S.A. 2014 Supp. 60-2013(b).

In claiming that the district court should have reintegrated him with his children in June or July 2013, Father does not name a specific order he challenges, but based on that time period, the most likely order would be the court's order from the November 2013 permanency hearing. In that order, instead of reintegrating Father with M.E. and J.E., the court determined the children should not be reintegrated at that point. Father claims it was reversible error for the court not to reintegrate him. We do not have jurisdiction to review the district court's decision from the summer of 2013.

Father filed his notice of appeal on December 17, 2014. In it, Father expressed his desire to "appeal from the Journal Entry of Termination of Parental rights dated October 30, 2104." Even if the district court's order from the November 2013 permanency hearing fell within the five categories of appealable orders, we lack jurisdiction to review because Father failed to file a notice of appeal to that order within 30 days. See *In re N.A.C.*, 299 Kan. at 1106. We do not have jurisdiction to consider the issue because Father did not file a timely notice of appeal as to that temporary order. Additionally, Father's notice of appeal only specified his desire to appeal the termination of his parental rights. We decline to address the 2013 issue.

Father also argues the social services providers failed to expend reasonable efforts to reunite him with his children.

8

When reviewing a district court's findings on unfitness, the standard of review is clear: The district court's findings must be supported by clear and convincing evidence. K.S.A. 2014 Supp. 38–2269(a). When reviewing the district court's decision to terminate parental rights, we must "consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence," that the parent's rights should be terminated. See *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do "not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

If a child is adjudicated a CINC, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2014 Supp. 38-2269(a). The Revised Kansas Code for Care of Children lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2014 Supp. 38-2269(b) and (c). Any one of the factors "may, but does not necessarily, establish grounds" for terminating a parent's rights. K.S.A. 2014 Supp. 38-2269(f). The district court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2014 Supp. 38-2269(b).

In the present case, the district court found Father unfit based on eight factors:

- K.S.A. 2014 Supp. 38-2269(b)(1)—emotional illness, mental illness, mental deficiency, or physical disability of the parent of such duration or nature as to render the parent unable to care for the ongoing physical, mental, and emotional needs of the child;
- K.S.A. 2014 Supp. 38-2269(b)(2)—conduct toward a child of a physically, emotionally, or sexually cruel or abusive nature, including Father's domestic

9

violence convictions and testimony that revealed that he interacted with women by making them fear him;

- K.S.A. 2014 Supp. 38-2269(b)(3)—the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the children, including Mother's substance abuse, which Father allowed his children to be around. Father also tested positive for methamphetamines during this case, and the court found his excuse uncredible;

- K.S.A. 2014 Supp. 38-2269(b)(4)—physical, mental, or emotional abuse or neglect or sexual abuse of a child, including Father's domestic violence convictions and testimony stating that he interacted with women by making them fear him;

- K.S.A. 2014 Supp. 38-2269(b)(7)—failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family, which is supported by the case worker's and therapist's testimony and St. Francis' October 2014 court report that indicated Father had not learned from his mistakes or taken responsibility for his actions as a cause for the situation of M.E. and J.E. in spite of efforts by the case worker, therapist, and other social services providers to try to reintegrate the family;

- K.S.A. 2014 Supp. 38-2269(b)(8)—lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the children;

- K.S.A. 2014 Supp. 38-2269(c)(1)—failure to assure care of the children in the parental home when able to do so; and

- K.S.A. 2014 Supp. 38-2269(c)(3)— failure to carry out a reasonable plan approved by the court directed toward the integration of the children into a parental home, which is supported by the case worker's and therapist's testimony and St. Francis' October 2014 court report which indicated that Father had not learned from his mistakes or taken responsibility for his actions as a cause for the

10

situation of M.E. and J.E. in spite of efforts by the case worker, therapist, and other social services providers to try to reintegrate the family.

The first step we must undertake is to determine whether the district court's findings of unfitness were supported by clear and convincing evidence. Father argues they were not based on the tasks he had completed and the progress he had made in the case. Father focuses on the evidence that favors him such as listing the tasks he did complete, mentioning his ability to maintain employment, emphasizing the stability his new marriage provided, and reminding us how he had increased visitation. He contends the court should have restarted family therapy, and the decision not to restart it was proof that the social services providers had not expended reasonable efforts.

Some amount of evidence supports this contention. The district court had increased Father's visitation and noted that Father was a potential reintegration resource. The case worker also testified he had not observed the children to be fearful of Father. The therapist indicated in her report that Father clearly loved M.E. and J.E. Even still, clear and convincing evidence supports the termination of his parental rights.

The only statutory basis for termination Father specifically addresses is the reasonableness of the efforts made by the social services providers.

K.S.A. 2014 Supp. 38-2269(b)(7) provides that when determining the fitness of a parent, one of the factors the court may consider is the "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." This clearly imposes an obligation on the relevant agencies to expend reasonable efforts towards reintegrating the children with the parents by correcting the conduct and condition that resulted in the removal of the children. See K.S.A. 2014 Supp. 38-2201(b)(8) (citing as a goal of the Revised Code the provision of "preventative and rehabilitation services, when appropriate, to abused and neglected children and their families so, if possible, the

11

families can remain together without further threat to the children"). The statutes governing unfitness determination, however, do not require proof that the appropriate agencies made a herculean effort to lead the parent through the responsibilities of the reintegration plan. See *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. __ (May 12, 2015); *In re J.R.*, No. 104,975, 2011 WL 2175953, at * 6 (Kan. App. 2011) (unpublished opinion); *In re B.K.S., Jr.*, No. 95,297, 2006 WL 2443937, at *2 (Kan. App. 2006) (unpublished opinion).

In the present case, Father's original case plan included the following tasks: a clinical interview and assessment; domestic violence classes; hair follicle tests every 90 days; age appropriate parenting classes; random urinalysis testing; substance abuse evaluation; obtain, maintain, and provide proof of full-time employment; obtain and maintain appropriate housing; and supervised visitation. The record reveals St. Francis provided services; J.E. and M.E. received case management through ComCare; J.E. and M.E. received individual therapy, medication for J.E., and individualized education plans; Father received free hair follicle testing; and social services providers completed home visits. The case worker testified that he served as a resource to help Father learn about and access other social services providers, that he helped Father find low cost UA testing and that the social services providers paid for hair follicle testing. In light of these efforts, the district court's decision not to restart family therapy on the advice of therapists does not indicate the providers failed to expend reasonable efforts on his behalf. The social services providers were under no duty to expend herculean efforts. Father's claim that the social services providers did not make reasonable efforts on behalf of his family is contradicted by the record.

Father fails to challenge the other seven reasons for termination and does not actually address the sufficiency of the evidence relied upon by the district court when it terminated his parental rights. But those findings are supported by clear and convincing evidence. In regards to an illness or deficiency of such duration or nature that renders a

12

parent unfit, the case worker testified that Father would be unable to provide for the emotional needs of M.E. and J.E. and the therapist indicated in her report that Father "may not understand even with the time how to truly work with his emotionally hurt children."

Turning to Father's conduct of a physically or emotionally abusive nature and physical, mental, or emotion abuse or neglect towards M.E. and J.E., Father admitted to hitting M.E. so hard it left bruises on his back after M.E. had misbehaved. The therapist also testified that Father's erratic behavior negatively affected the emotional state of M.E. and J.E.

Regarding Father's use of dangerous drugs, the record indicates Father tested positive for methamphetamines as recently as January 2014; the case worker had received three separate anonymous calls indicating Father was using drugs; and though Father had submitted negative tests, he had a history of trying to cheat drug tests. The case worker also testified Father had consistently delayed submitting to drug tests.

In regards to Father's lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of M.E. and J.E., the record on appeal indicates this case had been ongoing for 2 1/2 years at the time Father's rights were terminated. Though Father was almost reunited with his children twice, both times Father's actions prevented reintegration. In July 2013, Father hit M.E. so hard that it left bruising on his back, and in January 2014, Father tested positive for methamphetamines. The therapist indicated Father had "avoided help" and was "too defensive" to therapy. Father never took responsibility for the fact that he was the key to his children's success.

Turning to Father's failure to assure care of the children in his home, again, the evidence revealed Father had used physical punishment in his home and continued to abuse methamphetamines.

13

Finally, regarding Father's failure to carry out a reasonable plan approved by the court, the record on appeal indicates that Father successfully completed many of the tasks assigned to him. But the therapist testified Father never fully engaged in therapy, which was likely most important for successful reintegration. The case worker also said Father did not understand the needs of his children.

Our next step is to determine whether clear and convincing evidence supported the district court's determination that Father's behavior was unlikely to change in the foreseeable future. See K.S.A. 2014 Supp. 38-2269(a). A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Moreover, the term *foreseeable future* is measured from the child's perspective and takes into account a child's perception of time. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). This court has considered periods of time as short as 7 months to be the foreseeable future from a child's perspective. 41 Kan. App. 2d at 790.

Father does not appeal this finding. It is supported by clear and convincing evidence. In its ruling the district court explained that Father loved the boys, but he had been unable to show he could care for them, despite being 2 1/2 years into the case. The court noted there was still a "pattern of obstacles in the case." Father had not followed through with therapy or taken responsibility for the situation. Despite being given the resources to help him understand the needs of his children, Father had yet to step up and engage in therapy. Based on this evidence, the district court concluded that it was highly probable that Father would be unable to care for the emotional needs of M.E.'s and J.E. in the foreseeable future.

The last consideration is whether the district court correctly determined that terminating Father's parental rights was in M.E. and J.E.'s best interests. K.S.A. 2014 Supp. 38-2269(g)(1) provides that even after a finding of unfitness, the district court must

14

determine whether the termination of parental rights is in the best interests of the children.

Because it hears the evidence directly, the district court is in the best position to determine the best interests of the children, and an appellate court cannot overturn it without finding an abuse of discretion. See *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002); *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255, *rev. denied* 291 Kan. 911 (2010). An abuse of discretion occurs when the district court bases its decision on an error of fact or law or when no reasonable person would agree with the decision of the district court. *Northern Natural Gas Co.*, 296 Kan. at 935.

On appeal, Father does not address the district court's finding that terminating his parental rights was in the best interests of his children. However, based on the evidence, a reasonable person could have agreed with the court on this finding. At the time of the trial, Father had not engaged in therapy, did not understand the needs of his children, and could not care for their emotional needs. He never took responsibility for the role his choices played in the district court's decision. The district court could fairly conclude that it was in M.E.'s and J.E.'s best interests and served their physical and emotional health to terminate Father's rights.

Ultimately, the evidence provided at the termination trial demonstrated that Father cared deeply for M.E. and J.E. but could not adequately provide for their needs in the near future. As such, the district court's decision to terminate Father's parental rights is supported by clear and convincing evidence. Accordingly, the district court's judgment is affirmed.

Affirmed.